UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-CV-22476-RAR

ROMAELLO D'FRANCO,

    Plaintiff,

v.

FONTAINEBLEAU FLORIDA HOTEL, LLC

    Defendant.

_____/

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** is before the Court on Defendant's Motion for Partial Summary Judgment (ECF No. 44),[1] which is accompanied by Defendant's Statement of Undisputed Material Facts (ECF No. 43). Plaintiff filed a Response brief (ECF No. 67) and a Response to Defendant's Statement of Material Facts (ECF No. 63). Defendant filed a Reply brief (ECF No. 92). Upon consideration of the Motion, Response, Reply, and being fully advised in the premises hereof, I recommend that Defendant's Motion for Partial Summary Judgment be **GRANTED**.

**I.     BACKGROUND**

Defendant Fontainebleau operates a hotel on Miami Beach, Florida that contains various retail stores, including Morris & Co., a gift and sundry shop. (ECF No. 43 ¶ 1). Defendant hired Plaintiff Romaello D'Franco in 2008 as an assistant manager at Morris & Co. (*Id.* ¶ 2). In 2013, he was promoted to manager of the shop. (*Id.* ¶ 3). He served in that role until his termination on

---

[1] Pursuant to 28 U.S.C. § 636(b)(1)(A) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, the Honorable Rodolfo A. Ruiz, II, United States District Judge, referred this Motion to me to take all action as required by law. (ECF No. 90).

July 5, 2019. (*Id.* ¶ 4). During the 11 years Mr. D'Franco worked for Fontainebleau, he was the only Black assistant manager and Black manager in the retail department.[2] (ECF No. 63 ¶ 52).

Mr. D'Franco was hired in 2008 at a base annual salary of $53,999.92. (*Id.* ¶ 39). In 2009, Fontainebleau reduced his salary by 20 percent due to economic challenges. (*Id.* ¶ 40). In 2010, 2014, and 2016 through 2018, Mr. D'Franco received performance reviews indicating that he was a "key performer," the highest rating available. (*Id.* ¶ 43). However, by 2019, his annual salary had only increased to $60,706.82—a $6,706.90 increase from his original salary. (*Id.* ¶ 44).

Fontainebleau hired two other assistant retail managers in 2008. (*Id.* ¶¶ 47–48). Ms. Aguilar is a White Hispanic female. (*Id.* ¶ 47). In 2008, her annual salary was $40,000.00. (*Id.*). She too became a store manager in 2013 and began earning $56,000.00 per year. (*Id.*). By 2019, her annual salary was $77,250.00—$37,250.00 more than her 2008 salary. (*Id.*). Mr. Cardona is a White Hispanic male. (*Id.* ¶ 48). As an assistant retail manager, he earned a salary of $55,000.00. (*Id.*). In 2014, even though Mr. Cardona had since gone from assistant retail manager to sales associate, Mr. Cardona's annual salary was $60,000.00, which was about $10,000 more than what Mr. D'Franco was making at the time. (*Id.*).

From 2010 to 2013, Mr. D'Franco was the only retail manager providing shoe shining services. (*Id.* ¶ 53). During a wedding at the hotel in 2013, Mr. D'Franco served as a "manservant," assisting hotel guests with getting dressed. (*Id.*). From 2015 to 2019, Mr. D'Franco and Natalia Sandic, a retail supervisor, witnessed two White retail managers make numerous racially offensive comments in front of Robin Gamm-Sweigert, the Director of Retail, such as "your people"—referring to Black people—"are allergic to customer service," "replacing merchandise with books

---

[2] Plaintiff's Response Statement of Material Facts sets forth additional facts in Paragraphs 36 through 75. Defendant did not file a Reply Statement of Material Facts as required by Southern District of Florida Local Rule 56.1(b)(3)(A). Accordingly, Paragraphs 36 through 75 may be deemed admitted to the extent they are supported by cited record evidence. *See* S.D. Fla. L.R. 56.1(c).

is kryptonite to your people," "your people go to Ida & Harry to steal and not buy anything," and "your people are classless." (*Id.* ¶¶ 53–54). Ms. Gamm-Sweigert took no action. (*Id.* ¶ 53).

From 2012 to 2019, Mr. D'Franco complained several times to Human Resources employees about compensation disparity and treatment of Black people in the workplace. (*Id.* ¶ 50). On May 17, 2018, he wrote an email to Ms. Gamm-Sweigert about pay discrepancy. (*Id.* ¶ 49). On June 7, 2019, Mr. D'Franco complained to Ms. Gamm-Sweigert about racial discrimination and harassment. (*Id.* ¶ 51).

The Lapis Spa is another retail establishment at the Fontainebleau hotel. (ECF No. 43 ¶ 1). On June 14, 2019, a Lapis Spa employee discovered that several "Tata Harper"-brand items of merchandise were missing from the Lapis Spa store. (*Id.* ¶ 5; ECF No. 63 ¶ 5). A few days later, Ms. Gamm-Sweigert told Jim Wheatley, Vice President of Life Safety and Security, that the merchandise was missing. (ECF No. 43 ¶ 6). Mr. Wheatley assigned Security Manager Steve Nelson to commence an investigation. (*Id.* ¶ 7).

Mr. Nelson and Ms. Gamm-Sweigert reviewed footage from hotel security cameras for the days preceding the discovery of the missing items. (*Id.* ¶ 8). The footage shows Mr. D'Franco entering the Lapis Spa store on June 13, 2019, at 7:11 A.M. (*Id.* ¶ 9a). The store was closed at this time. (*Id.* ¶ 9c). Mr. D'Franco retrieved a small shopping bag from behind the cash register, browsed the store, and then placed "at least two items in green boxes" in the shopping bag. (*Id.* ¶ 9d–g). The missing "Tata Harper" boxes are green. (*Id.* ¶ 9h). Mr. D'Franco, carrying the shopping bag, then walked through the hotel and into the parking garage. (*Id.* ¶ 9j–p). The bag now appeared to contain tissue paper protruding from the top. (*Id.* ¶ 9o).[3] When he returned from the

---

[3] Plaintiff disputes the fact that the video shows tissue paper in the bag at any time. (ECF No. 63 ¶ 9o). In support of the existence of a dispute, Plaintiff says, "[t]he video itself is the best evidence." (*Id.*). Further, Plaintiff argues that the appearance of tissue paper was not considered during Defendant's investigation and therefore Defendant should not be permitted to "expand the scope of [its] 2019 investigation." (*Id.*).

3

parking garage and reentered the hotel, Mr. D'Franco was still carrying the shopping bag but no tissue paper was protruding from the top anymore. (*Id.* ¶ 9r). He assumed his station at Morris & Co. (*Id.* ¶ 9t). Finally, Mr. D'Franco opened the shopping bag and retrieved a small blue pouch containing the cash given to him by the hotel for the purpose of making change at the cash register. (*Id.* ¶ 9w). Defendant claims that the bag did not contain green boxes when Mr. D'Franco opened it to retrieve the pouch; Plaintiff disputes this. (*Id.* ¶ 9x; ECF No. 63 ¶ 9x).

Mr. Nelson and his associate Mr. Carpenter interviewed Mr. D'Franco on June 27, 2019. (ECF No. 43 ¶ 10). During the interview, Mr. D'Franco stated that, generally, if a guest requested merchandise when the store containing the item was closed, he would go to the closed store, retrieve it, and ring it up at his store. (*Id.* ¶ 12). If the guest never came to purchase the item after he had requested it, Mr. D'Franco would return it to the store it came from. (*Id.* ¶ 13). Mr. D'Franco did not recall whether a guest had in fact asked him for merchandise from Lapis Spa. (*Id.* ¶ 15). He denied taking the missing merchandise. (ECF No. 63 ¶ 17).

Mr. D'Franco asked to leave the interview to pick up his daughter from school. (ECF No. 43 ¶ 17; ECF No. 63 ¶ 17). Mr. Nelson and Mr. Carpenter escorted Mr. D'Franco to Morris & Co. to retrieve his belongings. (ECF No. 43 ¶ 19). Mr. D'Franco picked up a bag and proceeded to take it with him. (*Id.* ¶ 20). Mr. Carpenter asked to search the bag, but Mr. D'Franco refused. The Fontainebleau Employee Handbook informs employees that the company may search any bags or parcels taken by employees off the premises at any time. (*Id.* ¶ 22). Mr. D'Franco was suspended pending further investigation. (*Id.* ¶ 24.)

On July 2, 2019, Mr. D'Franco attended a second interview conducted by Fontainebleau's Vice President of Human Resources and Director of Talent Management. (*Id.* ¶¶ 25–26). His responses to inquiries were essentially the same. *See* (*Id.* ¶ 27).

Defendant terminated Mr. D'Franco's employment on July 5, 2019 via telephone call and emailed letter. (*Id.* ¶ 31). The letter stated, "you are being terminated effective today . . . because our investigation has concluded that you have engaged in theft of Company property." (*Id.* ¶ 32). Mr. D'Franco received his final paycheck on July 12, 2019. (*Id.* ¶ 34).

Ms. Sandic swears that on a prior occasion, Elisa Gelb, a White retail manager for Bleau Signature, took a book priced at approximately $1,000 from Morris & Co. for personal use without payment. (ECF No. 63 ¶ 66). When it was discovered missing, she was allowed to pay for it, and she was not disciplined or terminated. (*Id.*). Similarly, Stacey Fox, a White retail manager for Ida and Harry, took luggage from Morris & Co. (*Id.* ¶ 67). When it was discovered missing, she too was allowed to pay for it and was not terminated. (*Id.*).

Mr. D'Franco filed this action on July 5, 2023, asserting one claim of "Violation of 42 U.S.C. § 1981" and one claim of Retaliation Under 42 U.S.C. § 1981. (ECF No. 3). In the First Amended Complaint, the allegations contained under "Count I – Violation of 42 U.S.C. § 1981" include those that Mr. D'Franco was paid less than similarly situated White employees, that other employees often made racist remarks and jokes, that Mr. D'Franco made his concerns about the work environment known but was ignored, and that Mr. D'Franco was wrongly accused of stealing and terminated. (*Id.* ¶¶ 11–17). Mr. D'Franco's second claim alleges that Defendant retaliated against him for complaining internally about the work environment and filing an EEOC charge. (*Id.* ¶¶ 27–29). Defendant answered the First Amended Complaint. (ECF No. 8).

Defendant now brings this Motion for Partial Summary Judgment, which seeks summary judgment in its favor on: (1) Plaintiff's "atmospheric claims," and (2) Defendant's contention that Plaintiff's damages on his pay-differential claim are limited solely to his final paycheck. The statute of limitations for a claim under 42 U.S.C. § 1981 is four years. 28 U.S.C. § 1658(a).

Defendant argues: first, Plaintiff's atmospheric claim is comprised solely of acts that occurred more than four years before he filed suit; and second, Plaintiff's final paycheck is the only paycheck he received in the filing period.

In response, Plaintiff argues that Mr. D'Franco's termination occurred in the filing period and the termination is sufficiently related to the other acts comprising his hostile environment claim to deem the claim timely. Second, Mr. D'Franco's back pay damages are not limited to a four-year look-back period.

## II.     LEGAL STANDARD

Summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for its motion and identifying the portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must identify an absence of evidence to support the nonmoving party's case. *Id.* at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts to the respondent. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, it must support its assertion that a genuine material fact remains in dispute by citing to specific parts of the record. *Sutton v. Royal Caribbean Cruises Ltd.*, 285 F. Supp. 3d 1349, 1351 (S.D. Fla. 2018), *aff'd*, 774 F. App'x 508 (11th Cir. 2019). A fact or issue is material for purposes of summary judgment only if it might affect the outcome of the suit under the governing law. *Webb v. Carnival Corp.*, 360 F. Supp. 3d 1339, 1343 (S.D. Fla. 2017).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Id.* at 1344 (citing *Celotex*, 477 U.S. at 323).

In considering a motion for summary judgment, a court must evaluate the evidence and make all inferences in the light most favorable to the nonmoving party. *Sutton*, 285 F. Supp. 3d at 1351 (citing *Matsushita*, 475 U.S. at 586). However, a mere scintilla of evidence will not prevent summary judgment; the evidence must be sufficient to allow a rational trier of fact to find for the nonmoving party. *Matsushita*, 475 U.S. at 586–87. Conclusory and unsubstantiated averments do not suffice. *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000). The respondent must cite to specific record evidence. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116–17 (11th Cir. 1993).

### III.   DISCUSSION

#### A.   Whether a Hostile Work Environment Claim Has Been Pled.

The first count of Plaintiff's First Amended Complaint combines three theories of liability into a single claim for violation of 42 U.S.C. § 1981: (1) Plaintiff was paid less than similarly situated White employees on account of his race; (2) Plaintiff was subjected to a racially hostile work environment; and (3) Plaintiff's employment was terminated because of his race. In his Response to Defendant's Motion for Partial Summary Judgment, Plaintiff characterizes his own complaint as follows:

> [The] First Amended Complaint contains only two counts: Discrimination (Count I) and Retaliation (Count II). It did ***not*** contain a specific "atmospheric hostile work environment claim," although it does allege in paragraph 18 that plaintiff's race was a substantial or motivating factor in the hotel's treatment of plaintiff, including paying him less than non-black employees and making offensive racist comments in his presence, . . . which defendant [raised] into its summary judgment motion . . . . In light of defendant's argument, plaintiff moves to conform the pleadings to the evidence and to consider the "atmospheric" claim as if it had been pleaded [pursuant to Federal Rule of Civil Procedure 15(b)(2)].

(ECF No. 67 at 2 n.1) (citations omitted). Accordingly, Plaintiff's Response refers to his hostile work environment allegations as an "unpleaded" claim throughout the brief.

A response brief is an improper vehicle to seek relief from the Court. In any event, the Court need not consider whether the pleadings should be conformed to add a hostile work environment claim because doing so would be futile. All of the alleged acts comprising Plaintiff's hostile work environment claim occurred outside of the filing period; thus, the claim is untimely.

      **B.    To the extent Plaintiff has alleged a hostile work environment claim, the claim is time barred.**

The statute of limitations for a claim under 42 U.S.C. § 1981 is four years. 28 U.S.C. § 1658(a); *McCray v. Wal-Mart Stores, Inc.*, 377 F. App'x 921, 924 (11th Cir. 2010). Plaintiff filed this action on July 5, 2023. Plaintiff's employment was terminated on July 5, 2019. All the allegations regarding racist remarks in the workplace, tasks that Plaintiff was required to do but his peers were not, and Plaintiff's complaints about the work environment occurred prior to his termination. The key question before the Court is whether Plaintiff's termination is *part of* his hostile work environment claim. For the following reasons, I conclude that it is not.

In *National Railroad Passenger Corp. v. Morgan*, the Supreme Court addressed the question of "whether, and under what circumstances, a Title VII plaintiff may file suit on events that fall outside th[e] statutory time period" established by 42 U.S.C. § 2000e-5(e)(1). 536 U.S. 101, 105 (2002). Because, under Title VII, an individual must file a charge of discrimination or retaliation "within one hundred and eighty days after the alleged unlawful employment practice occurred," the Court had to determine what constituted an "unlawful employment practice" and when that practice has "occurred." *Id.* at 109 (emphasis omitted) (quoting 42 U.S.C. § 2000e-5(e)(1)). In doing so, the Court distinguished between "discrete" discriminatory or retaliatory acts and "repeated conduct." *Id.* at 110, 115.

8

"Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." *Id.* at 114. For example, each paycheck that delivers less to a Black individual than to a similarly situated White individual constitutes a discrete wrong actionable under Title VII. *See id.* at 112 (quoting *Bazemore v. Friday*, 478 U.S. 385 (1986)). Similarly, the allegation that United Air Lines forced Carolyn Evans to resign after she married because of its policy against married female flight attendants was also a discrete act, not a "continuing violation" as Ms. Evans had argued. *See id.* (discussing *United Air Lines, Inc. v. Evans*, 432 U.S. 553 (1977)). A discrete discriminatory act occurs on the day that it happened. *Id.* at 110. Title VII claims arising out of discrete acts are subject to a bright-line limitations rule: they "are not actionable if time barred, *even when they are related to acts alleged in timely filed charges*." *Id.* at 113 (emphasis added). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.*

In contrast, the "very nature" of hostile environment claims "involves repeated conduct." *Id.* at 115. A hostile environment "cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* Because a "hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice,'" such claim is timely if just one act contributing to the claim occurs within the filing period. *Id.* at 117.

> It does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Id.*

Plaintiff has not asserted a claim under Title VII; he has asserted a violation of 42 U.S.C. § 1981. Like the case at hand, in *Shields v. Fort James Corp.*, African American plaintiffs alleged that they were subjected to a racially hostile work environment and filed suit under section 1981.

9

305 F.3d 1280, 1281 (11th Cir. 2002). The Eleventh Circuit held that *Morgan*'s framework applied to hostile work environment claims under section 1981 as well. *Id.* at 1282.

> An allegation that an employer has allowed a racially hostile work environment to prosper embodies a single violation of an employee's right to 'the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship' and, therefore, should be reviewed in its entirety if any part of this allegation falls within the statute of limitations period.

*Id.* at 1282–83 (quoting 42 U.S.C. § 1981).

With these principles in mind, we now reach the question at the heart of Defendant's Motion: was Plaintiff's termination one act in a series of alleged acts constituting a hostile work environment claim? If the answer is yes, then Plaintiff's hostile environment claim is timely because the termination occurred in the filing period. So long as one "act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Morgan*, 536 U.S. at 117.

A district court is tasked with determining "whether the acts about which an employee complains are part of the same actionable hostile work environment practice." *Id.* at 120. But *Morgan* did not address the question of whether a discrete act of discrimination, which by itself may be actionable, can also constitute a contributing act in a hostile environment claim.

In *Chambless v. Louisiana-Pacific Corp.*, a panel of the Eleventh Circuit held that it can.

> Where the discrete act is sufficiently related to a hostile work environment claim so that it may be fairly considered part of the same claim, it can form the basis for consideration of untimely, non-discrete acts that are part of the same claim. The pivotal question is whether the timely discrete acts are sufficiently related to the hostile work environment claim.

381 F.3d 1345, 1350 (11th Cir. 2007). This is the majority view among the Circuits who have taken up the question. *See King v. Aramark Servs. Inc.*, 96 F.4th 546, 561 (2d Cir. 2024); *Guessous v.*

10

*Fairview Prop. Invs., LLC*, 828 F.3d 208, 223 (4th Cir. 2016); *McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887, 902 (6th Cir. 2024); *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011).[4]

But one year later, a different Eleventh Circuit panel ruled a "district court properly found" that some of the plaintiff's allegations "constitute discrete acts that must be challenged as separate statutory discrimination and retaliation claims." *McCann v. Tillman*, 526 F.3d 1370, 1379 (11th Cir. 2008). "These cannot be brought under a hostile work environment claim that centers on discriminatory intimidation, ridicule, and insult." *Id.* (internal quotations omitted); *see also Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005) ("If the flames of an allegedly hostile environment are to rise to the level of an actionable claim, they must do so based on the fuel of timely non-discrete acts.").

The Eleventh Circuit again touched upon the issue in *Gowski v. Peake*, 682 F.3d 1299 (11th Cir. 2012),[5] where the Court wrote, "[d]iscrete acts cannot alone form the *basis* of a hostile work environment." *Id.* at 1312–13 (11th Cir. 2012) (citing *McCann*). "But the jury could *consider* discrete acts as part of a hostile work environment claim." *Id.* at 1313 (citing *Chambless*). A nearby district court recently explained, "*Gowski* treated discrete acts as part of the hostile work environment for purposes of measuring its severity and pervasiveness. But like *Chambless*, it did so only after confirming that the discrete acts 'played a role in the intimidation and ridicule,' echoing *Chambless*'s 'sufficiently related' standard." *Caldwell v. Kimberly-Clark USA, LLC*, --- F. Supp. 3d ----, 2024 WL 4255267, at *12 (S.D. Ala. Sept. 19, 2024).

---

[4] *See also Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 738, 740 (5th Cir. 2017) ("(1) the plaintiff must demonstrate that the separate acts are related; (2) the violation must be continuing; intervening action by the employer . . . will sever the acts that preceded it from those subsequent to it; and (3) the doctrine may be tempered by the court's equitable powers, which must be exercised to 'honor Title VII's remedial purpose . . . .'").

[5] "*Monaghan v. Worldpay US, Inc.*, 955 F.3d 855 (11th Cir. 2020) . . . effectively overruled *Gowski* insofar as it applied to retaliatory-hostile-work-environment claims." *See Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1206–07 (11th Cir. 2021).

The discrepancy between *Chambless* and *McCann* has resulted in inconsistent approaches in cases like this one—where a timely discrete act supposedly contributed to a hostile environment otherwise comprised of untimely non-discrete acts. *Compare, e.g.*, *Moore v. San Carlos Park Fire Prot. & Rescue*, 808 F. App'x 789, 796 (11th Cir. 2020) (citing *Chambless*'s "sufficiently related" standard), *and Stewart v. Jones Util. & Contracting Co.*, 806 F. App'x 738, 742 (11th Cir. 2020) (same), *and Smith v. DeJoy*, No. 23-cv-593, 2024 WL 5145956, at *7 (N.D. Ala. Dec. 17, 2024) (applying "sufficiently related" standard), *and Brown-Edwards v. Marshall*, No.20-cv-876, 2023 WL 121450, at *9 (M.D. Ala. Jan. 6, 2023) (same), *with Freeman v. City of Riverdale*, 330 F. App'x 863, 866 (11th Cir. 2009) (citing *McCann* for the proposition that discrete acts cannot be considered part of a hostile work environment and must be challenged separately), *and Swindle v. Hale*, No. 09-cv-1458, 2012 WL 4725579, at *14 (N.D. Ala. Sept. 30, 2012) (same), *and Jackson v. Atlanta Pub. Schs.*, No. 20-cv-1056, 2021 WL 12300129, at *4 (N.D. Ga. July 9, 2021) (same), *and Lisenby v. Williams*, No. 17-cv-54, 2018 WL 1512374, at *5 n.6 (M.D. Ala. Mar. 27, 2018) (same).[6]

If *Chambless* and *McCann* represent holdings on the same issue, *Chambless* presumably would prevail under the prior-panel-precedent rule. *Caldwell*, 2024 WL 4255267, at *11 (citing *League of Women Voters Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 943 (11th Cir. 2023)). Further, *McCann*'s holding may not have been as sweeping as some courts have stated. Just because *that plaintiff's* allegations of a racially motivated suspension, "unsatisfactory" performance review, and failure to promote were "discrete acts that must be challenged as separate statutory discrimination

---

[6] One district court addressed the apparent contradiction and concluded "there is no split in authority" because *Chambless* merely held, in determining whether a hostile environment claim is *timely*, "the entire period of the hostile environment may be considered . . . for the purposes of determining liability if an act relating to the claim occurred within the filing period." *Dawkins v. Fulton Cnty. Gov't, State of Ga.*, No. 10-CV-1718, 2012 WL 12892184, at *2–3 (N.D. Ga. Mar. 14, 2012). On the other hand, *McCann* "specifically addressed the issue of whether discrete acts could form the basis of a hostile work environment claim," and held that they could not. *Id.* at *3. Suffice to say, not all are persuaded by that analysis. *See Caldwell*, 2024 WL 4255267, at *11.

and retaliation claims," and those allegations could not "be brought under a hostile work environment claim that centers on discriminatory intimidation, ridicule, and insult," does not necessarily mean that allegations of discrete discriminatory acts can never be considered part of a hostile work environment claim. *See McCann*, 526 F.3d at 1374, 1379. Perhaps putting this issue to bed, a later Supreme Court opinion characterized its prior *Morgan* decision as "holding that a hostile-work-environment claim is a single 'unlawful employment practice' that includes every act composing that claim, *whether those acts are independently actionable or not*." *Green v. Brennan*, 578 U.S. 547, 557 (2016) (emphasis added); *see id.* at 562 n.7.

However, the Court need not decide whether *Chambless* controls because Plaintiff's termination is not sufficiently related to the allegations that he was subjected to a racially discriminatory environment. Because no act contributing to the hostile work environment claim occurred in the filing period, the claim is time barred.

"[A]cts may be part of the same unlawful employment practice if the 'pre- and post-limitations period incidents involve the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.'" *Moore*, 808 F. App'x at 796 (quoting *Morgan*, 536 U.S. at 120). Plaintiff alleges that prior to the limitations period, other employees often made racist comments and jokes, Defendant was aware of this, and Plaintiff was made to do demeaning tasks that similarly situated White employees were not required to do. The allegation that Plaintiff was terminated because of his race is not the same type of "discriminatory intimidation, ridicule, and insult." *Morgan*, 536 U.S. at 116 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

13

The cases where courts have held that a timely discrete act of discrimination "saved" a hostile environment claim involved situations where the untimely non-discrete acts clearly escalated to the termination or other discrete act.

In *King v. Aramark Services Inc.*, King was the sole woman who reported to a male supervisor, Thomas. 96 F.4th 546, 553 (2d Cir. 2024). For two years, even though King's objective performance metrics were extremely positive, Thomas would single out King in front of other employees and cite her performance as an example of what not to do, rated her performance as not meeting expectations, denied her a merit-based salary increase, excluded her from important meetings, gave her unrealistic deadlines, denied her office space, spoke to her in a condescending manner in front of colleagues and superiors, and made comments about her weight. *Id.* at 553–55. Thomas fabricated performance-related complaints and created highly impracticable protocols to try to get King fired. *Id.* at 554. Discovery revealed that Thomas was orchestrating the firing of King well before the events for which she was purportedly fired occurred. *Id.* The Second Circuit ruled, given that Thomas played a decisive role in King's termination, there was sufficient evidence to enable a jury to find that Thomas's "decisive role contributed to his long-running enterprise of subjecting King to a pervasive, hostile work environment." *Id.* at 562.

In *Royal v. Potter*, Royal was forced to engage in nonconsensual sexual intercourse with her supervisor, Brownlow, on a weekly basis for 17 months. 416 F. Supp. 2d 442, 445 (S.D.W.V. 2006). At first, Royal was promoted to a temporary supervisory role. *Id.* When she attempted to stop the sexual relations, Brownlow said she must not "want to prosper." *Id.* The same month, Brownlow removed Royal from her supervisory assignment, causing her to earn less money and damaging her chances for a promotion. *Id.* Brownlow told the plant manager that Royal was removed due to poor performance. *Id.* Several months later, Royal applied for the position of

supervisor of distribution operations. *Id.* Brownlow was the only interviewing official. *Id.* During her interview, Brownlow asked Royal what color underwear she was wearing. *Id.* at 445–46. When Royal asked Brownlow why she did not receive the position, he indicated that he did not promote people with whom he has sex. *Id.* at 446. Due in part to the fact that the removal of Royal from the supervisory role and the failure to promote her "were direct decisions by Brownlow," Royal had "provided sufficient evidence to suggest that these [discrete] acts . . . contribut[ed] to the hostile work environment" *Id.* at 453–54. *See also Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 223 (4th Cir. 2016) (holding that withdrawal of assignments and termination could support hostile work environment claim mainly comprised of discriminatory remarks about the plaintiff's religion, making the claim timely).

In contrast to these cases, the record evidence does not support the contention that Mr. D'Franco's termination was sufficiently related to the racist comments and demeaning tasks he endured such that it could be considered part and parcel of the same hostile work environment claim. Defendant terminated Mr. D'Franco after it concluded that he stole company property. Mr. D'Franco vehemently denies that accusation, but the evidence does not suggest that Defendant's stated reason for the termination was a sham, as was the case in *King* and *Royal*. While Mr. D'Franco's termination appears to have been "perpetrated by the same managers" who assigned him demeaning tasks, the racist comments were made by fellow retail store employees. *See Morgan*, 536 U.S. at 120.

Mr. D'Franco's claim that Defendant terminated him because of his race may yet support an independent theory of liability. (Defendant has not moved for summary judgment on that claim and the undersigned takes no position on it.) But even if Mr. D'Franco was wrongfully terminated, it does not automatically follow that the termination was related to a preexisting hostile work

15

environment. Plaintiff has failed to establish that his termination was sufficiently related to the untimely non-discrete acts that comprise his hostile work environment claim. As no act contributing to the hostile work environment occurred in the filing period, Defendant is entitled to summary judgment on this claim.

    **C.    Plaintiff's disparate pay claim is limited to the sole paycheck he earned in the filing period.**

"[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. A plaintiff who fails to file a section 1981 claim for a discrete act within four years of the date of that act "lose[s] the ability to recover." *Cf. id.* at 110; *see also McCray v. Wal-Mart Stores, Inc.*, 377 F. App'x 921, 924 (11th Cir. 2010) (holding that statute of limitations for claims under 42 U.S.C. § 1981 is four years)

Each paycheck that delivers less to a person because of their race is a discrete act of discrimination that starts a new clock for filing an action. *See Morgan*, 536 U.S. at 112, 113; *Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1169, 1180 (11th Cir. 2005) ("We think it clear that pay claims of the type Ledbetter asserts are governed by that part of the *Morgan* decision addressing claims alleging 'discrete acts of discrimination.'"); *accord Short v. Immokalee Water & Sewer Dist.*, 165 F. Supp. 3d 1129, 1144 (M.D. Fla. 2016); *see also Stallworth v. Shuler*, 777 F.2d 1431, 1435 (11th Cir. 1985) (holding that a continuing violation of Title VII by failing to promote the plaintiff for years justified the district court's award of back pay "to the earliest statutory limit"); *Palmer v. Stewart Cnty. Sch. Dist.*, 215 F. App'x 822, 824 (11th Cir. 2007) (affirming ruling that the plaintiff's § 1981 disparate pay claim was time barred because the entire period during which she was allegedly paid less because of her race occurred before the filing period).

It is undisputed that the only paycheck Mr. D'Franco received during the filing period is the one from July 12, 2019. Therefore, that is the only paycheck he can challenge as part of his § 1981 claim. Because each paycheck is a discrete act of discrimination, the statute of limitations with respect to paychecks earned before July 5, 2019 has run. Plaintiff can no longer recover for those acts.

## IV. RECOMMENDATION

For the foregoing reasons, I recommend that Defendant's Motion for Partial Summary Judgment (ECF No. 44) be **GRANTED**.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable Rodolfo A. Ruiz, II, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida, this 7th day of March, 2025.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE